UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:26-cv-03925-SSS-BFM | Date | July 16, 2026 |
|---|---|---|---|
| Title | *Yoryet Maria Lozano Mosquera v. Warden Adelanto ICE Processing Center et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **(IN CHAMBERS) ORDER GRANTING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 3]**

Before the Court is Petitioner Yoryet Maria Lozano Mosquera's Ex Parte Application for a Temporary Restraining Order, [Dkt. No. 3, Application or "App"]. Respondents filed an Opposition. [Dkt. No. 9]. Having considered the parties' arguments, relevant legal authority, and the record in this case, the Court **GRANTS** the Application. [Dkt. No. 3].

## I.    BACKGROUND

Petitioner Yoryet Maria Lozano Mosquera is a 25-year-old dual national of Venezuela and Colombia. [Dkt. No. 1, Petition for Writ of Habeas Corpus or "Petition" or "Pet." ¶ 14]. On February 24, 2024, Petitioner entered the United States near Otay Mesa, California, without inspection, and was placed in removal proceedings [*Id.* ¶ 15]. Following her entry, U.S. Immigration and Customs Enforcement ("ICE") released Petitioner on an Order of Release on Recognizance ("OREC") under supervisory conditions in the Intensive Supervision Appearance Program ("ISAP"). [*Id.* ¶ 16].

Petitioner contends that, from the date of her release until January 13, 2026,

she complied with her ISAP reporting requirements and maintained contact with her supervising officers.  [*Id.* ¶ 17].  During this period, Petitioner asserts that she was employed for approximately one year in warehouse operations, inventory management, and house cleaning for ARIA MI PATRIA in Ontario, California. [*Id.* ¶ 18].

On January 13, 2026, Petitioner appeared for a scheduled ISAP check-in in San Bernardino, California, at which point ICE personnel took her into custody. [*Id.* ¶¶ 19–21].  Respondents allege that Petitioner committed twelve violations of her ISAP conditions, including violations related to home visits.  [*Id.* ¶ 20; Dkt. No. 2, "Mosquera Decl." ¶ 9].  Petitioner disputes this characterization and maintains that she consistently complied with her supervision conditions.  [*Id.*¶ 20.]  Petitioner has been detained at the Adelanto ICE Processing Center since that date, approximately six months as of the filing of the instant Application and Petition.  [*Id.* ¶ 22; Mosquera Decl. ¶ 14].  Petitioner represents that she has no criminal history and no pending criminal charges.  [*Id.* ¶ 23; Mosquera Decl. ¶ 11].

Petitioner alleges that, while detained, she has experienced dermatitis and recurrent fungal infections that she attributes to the facility's water, along with anxiety, depression, and panic attacks related to her prolonged detention, for which she has requested psychological care.  [*Id.* ¶ 26; Mosquera Decl. ¶ 12].  Petitioner also alleges that ICE personnel required her to remove her braids, which she describes as integral to her Afro-Colombian cultural identity, and placed her in a disciplinary cell until she complied.  [*Id.*¶ 27; Mosquera Decl. ¶ 12.]

On July 1, 2026, an Immigration Judge ordered Petitioner removed.  [*Id.*¶ 28; Mosquera Decl. ¶ 13.]  On or about July 6, 2026, Petitioner timely filed a Notice of Appeal with the Board of Immigration Appeals ("BIA").  [*Id.* ¶ 29; Mosquera Decl. ¶ 13.]  Because the appeal remains pending before the BIA, Petitioner contends that no administratively final order of removal currently exists. [*Id.* ¶ 30].

On July 14, 2026, Petitioner, proceeding pro se, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and a contemporaneous Ex Parte Application for a Temporary Restraining Order.  [Dkts. No. 1, 2].  Petitioner seeks an order (1) enjoining Respondents from transferring her out of the Central District of California, (2) enjoining Respondents from removing her from the United States pending resolution of the Petition, and (3) in the alternative, ordering her immediate release from custody.  [App. at 8].

CIVIL MINUTES—
GENERAL    Initials of Deputy Clerk <u>iv</u>

## II.    LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) that she is "likely to succeed on the merits" of [his] underlying claim, (2) that she is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a TRO if she has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

First, the Court finds that Petitioner has made a sufficient showing of likelihood of success on the merits. Once she was released and allowed to be at liberty, she retained a "protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (noncitizens protected by Due Process Clause). "[T]he government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 792 F. Supp. 3d at 1032 (citation modified). "[I]t is clear that there is a

CIVIL MINUTES—GENERAL    Initials of Deputy Clerk iv

significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide her with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." *Id.* at 1035. There is no indication in the record that such a hearing took place. On the contrary, Respondents have presented no evidence that Petitioner did not fully comply with every condition of her supervision at the time of his arrest.

In any case, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. *Fernández López v. Wofford*, No. 25-CV-01226-KES-SKO, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (citation modified)). Therefore, there is sufficient showing of likelihood that Petitioner's due process rights were violated.

Next, the Court finds that there is immediate, irreparable harm. Here, this case presents the requisite individualized exigency. Petitioner currently suffers immediate, irreparable harm because she has likely been detained in violation of his constitutional rights, and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Every minute of liberty lost while being detained is a violation of Petitioner's constitutional rights. Therefore, this factor favors Petitioner.

Finally, the balance of the hardships and public interest factors tip strongly in Petitioner's favor because she will suffer great hardship if this Court were to deny temporary injunctive relief. *See All. for the Wild Rockies*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip sharply" in the moving party's favor). In the absence of an injunction, Petitioner is experiencing and will continue to experience detention that resulted from a deprivation of his due process rights, and "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

CIVIL MINUTES— GENERAL   Initials of Deputy Clerk <u>iv</u>

### B.    Irreparable Harm

Next, the Court finds that there is immediate, irreparable harm.  The Court is aware that General Order No. 26-05 ("GO") states that TRO applications should be reserved for cases where the petitioner alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or the expedited briefing schedule.  [Dkt. No. 5 at 3].  Importantly, the GO does not foreclose the Court from issuing a temporary restraining order when the facts necessitate one.

Here, this case presents the requisite individualized exigency.  Petitioner currently suffers immediate, irreparable harm because she has likely been detained in violation of his constitutional rights, and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

Every minute of liberty lost while being detained in violation of Petitioner's constitutional rights cannot be addressed by a standard scheduling order.  Petitioner is also experiencing several health problems that are not adequately addressed by the available remedies in the facility.  [Pet. ¶ 26; Mosquera Decl. ¶ 12].  Therefore, even within the framework of General Order No. 26-05, this factor favors Petitioner.

### C.    Balance of Equities and the Public Interest

Finally, the balance of the hardships and public interest factors tip strongly in Petitioner's favor because she will suffer great hardship if this Court were to deny temporary injunctive relief.  *See All. for the Wild Rockies*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip sharply" in the moving party's favor).  In the absence of an injunction, Petitioner is experiencing and will continue to experience detention that resulted from a deprivation of his due process rights, and "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

CIVIL MINUTES—GENERAL    Initials of Deputy Clerk <u>iv</u>

## IV.    CONCLUSION

As such, the Court **GRANTS** Petitioner's Application for a TRO.  [Dkt. No. 3].  The Court **ORDERS** Respondents to immediately release Petitioner (A# 245-848-673) from their custody.

Respondents are **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. *Pinchi*, 792 F. Supp. 3d at 1037–38.  Respondents shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order. The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

**IT IS SO ORDERED.**